J-S38017-17

**NON-PRECEDENTIAL DECISION –SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: J.I.P., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: A.M.P., MOTHER | |
| | No. 368 EDA 2017 |

Appeal from the Decree Entered January 11, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000908-2016,
CP-51-DP-0002506-2011

BEFORE:  GANTMAN, P.J., SHOGAN and FITZGERALD,<sup>*</sup> JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JANUARY 24, 2018**

Appellant, A.M.P. ("Mother"), appeals from the decree entered on January 11, 2017.  The decree granted the petition filed by the Philadelphia Department of Human Services ("DHS" or the "Agency") to involuntarily terminate Mother's parental rights to her son, J.I.P., born in February of 2003 ("Child"),[1] pursuant to the Adoption Act, 23 Pa.C.S. § 2511.  After careful review, we affirm.

_____

* Former Justice specially assigned to the Superior Court.

[1]  In addition to challenging the involuntary termination of her parental rights to Child, Mother also assails Child's permanency goal change to adoption under 42 Pa.C.S. § 6351.  Mother's Brief at 15.  However, an order changing Child's permanency goal is not before this Court.  **See Commonwealth v. Preston**, 904 A.2d 1, 6 (Pa. Super. 2006) (en banc) (stating that matters which are not of record cannot be considered on
*(Footnote Continued Next Page)*

DHS became involved with Mother in 2010, due to Mother's drug use and inadequate housing. N.T., 9/29/15, at 7. The trial court noted that on August 5, 2010, in-home services were provided to assist Mother with parenting and helping her obtain substance abuse treatment. Trial Court Opinion, 3/2/17, at 2-3. In November of 2011, DHS learned that Mother was not attending substance abuse treatment and that she did not have adequate or appropriate housing. *Id.* at 3. These issues persisted, and Child was adjudicated dependent and removed from Mother's care on January 26, 2012. Order, 1/26/12. A safety plan was implemented in December of 2011, and Child was moved to foster care with Mother having supervised visitation. Trial Court Opinion, 3/2/17, at 4-5. Mother's participation in drug treatment and mental health treatment was sporadic throughout 2012 and 2013. *Id.* at 8. Mother continued a pattern of initially complying with DHS's plans by obtaining adequate housing and attending mental health and drug treatment; however, Mother would eventually cease

*(Footnote Continued)* ───────────────

appeal). The permanency review order dated January 11, 2017, indicated that DHS's petition to change the permanency goal to adoption was still pending before the trial court. In its opinion, the trial court noted that a hearing was scheduled for March 16, 2017, with regard to DHS's petition to involuntarily terminate the parental rights of M.V. ("Putative Father" or "Father"). Trial Court Opinion, 3/2/17, at 1 n.1. We point out that DHS was permitted to petition for the termination of parental rights without first changing the child's permanency goal. *In re S.E.G.*, 901 A.2d 1017, 1029 (Pa. 2006). Moreover, the record does not reflect any additional appeals filed by Mother with regard to Child pending before this Court. In addition, neither Putative Father nor any other individual claiming to be Child's father is a party to the instant appeal.

attending treatment regularly and lose her housing. *Id.* at 9-11. Mother continued to have visitation, but Child has been in foster care for more than five years. *Id.* at 10-14.

On October 4, 2016, DHS filed petitions for the involuntary termination of Mother's parental rights and goal change to adoption with respect to Mother. On January 11, 2017, the trial court held an evidentiary hearing on the involuntary termination petition with regard to Mother. At the commencement of the hearing, the trial court admitted as DHS Exhibit 1, by agreement of the parties, the notes of testimony from the September 29, 2015, termination/goal change hearing regarding three of Child's siblings, A.Y.V., J.M.V., and J.J.P. N.T., 1/11/17, at 4-8.[2] DHS then presented the testimony of Jose DeJesus, the Community Umbrella Agency ("CUA") case manager. Attorney Regina Tuchinsky, the Child Advocate, cross-examined Mr. DeJesus. On cross-examination, Mr. DeJesus testified that Mother resides in a one-bedroom apartment and that her fifteen-year-old daughter,

_____

[2] In a Memorandum filed on July 21, 2016, a panel of this Court affirmed the decrees terminating Mother's parental rights and the orders changing the permanency goals with regard to these three children. *In the Int. of A.Y.V., a Minor, et al.*, 154 A.3d 864, 3210 EDA 2015 (Pa. Super. filed July 21, 2016) (unpublished memorandum).

D.P., resides with her.[3] *Id.* at 20. Mr. DeJesus testified that there would not be sufficient space at the apartment for Child. *Id.*

Next, Mother testified on her own behalf. Mother testified that she sees Child once weekly on Saturdays, between 10:00 a.m. and 6:00 p.m., at her home. *Id.* at 25. She stated that they sometimes go out to eat together. *Id.* at 25. Mother also testified that she speaks with Child on the telephone every day and that he had told her that he expressed a desire to come home and be with his sister. *Id.* at 26-27. Mother stated that D.P. is fifteen years old, and that Child has a relationship with her. *Id.* at 27. Mother testified that she plans to move to a three-bedroom apartment and that she has been undergoing mental health treatment at Hispanic Community Counsel for two years. *Id.* at 27-28. Mother testified that she had previously attended mental health therapy at Citywide. *Id.* at 29-30. Mother stated that she meets all of D.P.'s daily needs. *Id.* at 28.

At the close of the testimony, the trial court stated as follows:

> Considering all the evidence which includes the evidence that was elicited at a prior termination hearing of which has now been moved into this record in the form of DHS-1, and the evidence offered today, which is deemed to be credible[,] by the case worker who has followed this case, the evidence is clear and convincing that [M]other has failed to remedy any of the issues that brought [C]hild into care and will not be in a position to remedy those issues going forward.

_____

[3] D.P. is not a party to this matter, and Mother's parental rights to D.P. are not involved in this appeal.

[C]hild has been in placement for over five years. Mother has modestly advanced any of her visitation and that appears to be the only goal in which she's compliant. She does not have sufficient hous[ing]. The story [has] changed regarding her housing. At times, she alleges to have a sufficient hous[ing] and then at critical moments during the hearings that housing disappears.

Considering the length in time in placement, the fact that [C]hild was removed from her care when he was placed the [c]ourt finds [termination appropriate] pursuant to [23 Pa.C.S. §] 2511[(a)(1),(2),(5), and (8)]. And considering as a basis for termination, considering [23 Pa.C.S. §] 2511[(b),] while there appears to be some bond between [M]other and [C]hild[,] that does not rise to a parental bond. Based upon the evidence which is clear and convincing[,] the parental bond exist [sic] with [C]hild's caretaker father[, who] will be the adoption resource.

Considering [23 Pa.C.S. § 2511(b),] and [23 Pa.C.S. § 2511(a)(1),(2),(5), and (8)] of the Juvenile [A]ct[,] [M]other's rights are terminated as to [Child].

N.T., 1/1/17, at 30-32.

The January 11, 2017 decree involuntarily terminated the parental rights of Mother to Child pursuant to section 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act. In the permanency review order entered on January 11, 2017, the trial court directed that legal custody of Child would remain with DHS, Child's placement would remain with foster care, and the ruling on the petition to change the goal to adoption pursuant to section

6351 of the Juvenile Act would not be made until after the hearing on March 16, 2017.[4]

On January 18, 2017, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her brief on appeal, Mother raises two issues, as follows:

> A. Whether the trial court erred in involuntarily terminating [M]other's parental rights where it was not supported by clear and convincing evidence when [M]other completed all of her FSP goals and bonding and parenting capacity had no merit?
>
> B. Whether the trial court erred in involuntarily terminating [M]other's rights where [M]other had consistently visited [C]hild and there was a bond between [M]other and Child and the termination of parental rights would have a negative effect on the developmental, physical and emotional needs of the child?

Mother's Brief at 5 (some capitalization omitted).[5]

In reviewing an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 9 A.3d 1179,

_____

[4] DHS states in its brief that Child's permanency goal was changed to adoption in an order filed on March 16, 2017. DHS's Brief at 11 n.4. As noted above, an order changing Child's permanency goal to adoption is not before this Court and does not appear of record.

[5] For purposes of our discussion, we have reordered Mother's issues.

1190 (Pa. 2010). If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, 36 A.3d 567, 572 (Pa. 2011) (plurality opinion)]. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel Bassett v. Kia Motors America, Inc.*, 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained:

[T]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 7 -

*Id.* (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of Section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). We will focus on Section 2511(a)(2) and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2) and (b).

In order to satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following

elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003). The grounds for termination of parental rights under section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

In her first issue, Mother challenges the termination of her parental rights under 23 Pa.C.S. § 2511(a). Mother does not specifically direct her argument at any particular subsection of section 2511(a), but challenges the termination under 23 Pa.C.S. § 2511(a)(1), (2), (5), and (8), in general. Mother argues that, in the hearing on September 29, 2015, the counsel representing DHS stipulated that Mother had completed her drug and alcohol, parenting, anger management, housing, and Achieving Reunification Center ("ARC") goals of her Family Service ("FSP") plan. Mother's Brief, at 15 (citing N.T. 9/29/15, at 6-8). Mother claims that the issue at the previous hearing was whether she had the parental capacity to parent her young children. *Id.* at 15. Mother contends that Child is not similarly situated to the younger children to whom her parental rights were previously

terminated. *Id.* She also argues that it has been one and one-half years since the September 29, 2015 hearing was held. *Id.* Mother states that she visits Child every weekend and that she takes care of her older child, D.P. *Id.* Thus, Mother urges that the trial court abused its discretion when it terminated her parental rights to Child.

The trial court addressed Mother's claims of error as follows:

> Mother's issues with mental health, and housing are substantiated on the record, both by the credible testimony of the CUA Case Manager Jose Dejesus, at both hearings, and also by incorporating the evidence elicited at the prior termination hearing, specifically the credible testimony of Dr. William Russell, a Psychologist with Assessment and Treatment Alternatives and Forensic Mental Health Services ("ATA").

> This [c]ourt's [o]pinion, filed on February 10, 2016, referred to Dr. Russell's Parenting Capacity Evaluation conducted in August 2014, to opine that Mother had a significant impairment to provide a consistent environment for the [c]hildren to reside, that she was unable to provide consistent care to herself and was unable to anticipate potential problems with her actions and how they might impact her [c]hildren. He noted that Mother minimized the impact that her poor choices had on her [c]hildren [and] precluded her from being able to provide them with safety and permanency. Mother's inability to provide stable housing throughout the history of the case was also noted in the [c]ourt's Opinion. (Opinion, 2/10/2016, p.3).

> The evidence is clear and convincing regarding Mother's non-compliance with the FSP objectives. Although Mother testified she provides parental care for her fifteen[-]year[-]old daughter, this [c]ourt was not persuaded that she is able to fulfill her parental responsibilities. Mother has yet to demonstrate an ability to meet her housing needs on her own. She testified before this [c]ourt that she at times has housing, but then at critical moments she does not. Based on the evidence presented, this [c]ourt found clear and convincing evidence to terminate Mother's parental rights pursuant to 23 Pa.C.S.A. §2511(a)(1), (2), (5), and (8).

* * *

This [c]ourt found that Mother evidenced an incapacity to parent. Mother repeatedly failed to complete objectives. The [c]ourt was not persuaded that Mother could or would resolve these issues in the near future.

Trial Court Opinion, 3/2/17, at 23-24, 26 (footnote omitted).

The trial court's conclusion regarding Mother's mental health and housing issues is supported by the record. Mother has repeatedly shown parental incapacities that she either cannot or will not remedy. We conclude that termination of Mother's parental rights under Section 2511(a)(2) is supported by competent evidence. **Adoption of S.P.**, 47 A.3d at 826-27.

Next, Mother asserts that the trial court abused its discretion in terminating her parental rights under Section 2511(b), as Child was bonded to her.

[M]other argues that the trial court erred in terminating her parental right to her son, J.I.P. where she had a substantial bond with her son. Testimony was that he saw her unsupervised on the weekends and that he enjoyed seeing her and his sister. He was thirteen-years-old at the time of the termination hearing and had only recently changed his mind to be adopted. Recent case law has advocated for the appointment of a child's attorney in these situations to assure that the child's position is properly asserts [sic]. [M]other believes that the order terminating her parental rights should be vacated or in the alternative, remanded for the appointment of a child advocate.

Furthermore, there was testimony that Mother had substantially completed her Family Service Plan/Single Case Plan objectives. She had attended parenting, mental health and had completed her drug and alcohol treatment. She was caring for [D.P.] without the intervention of the Philadelphia Department of Human Services and could care for J.I.P. independently.

- 11 -

Mother's Brief at 8.

We have explained that the focus in terminating parental rights under Section 2511(a) is on the parent; conversely, under Section 2511(b), the focus is on the child. *In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under Section 2511(b), our Supreme Court recently stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability." *In re K.M.*, 53 A.3d 781, 791 (Pa. Super. 2012). In *In re E.M.*, [620 A.2d 481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond. *In re K.M.*, 53 A.3d at 791.

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." *In re Z.P.,* 994 A.2d 1108, 1121 (Pa. Super. 2010) (internal citations omitted). "Additionally, Section 2511(b) does not require a formal bonding evaluation." *Id.* Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances . . . where direct observation of the interaction between the parent and the child is not

necessary and may even be detrimental to the child." ***In re K.Z.S.***, 946 A.2d 753, 762 (Pa. Super. 2008).

A parent's abuse and neglect are likewise a relevant part of this analysis:

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent . . . Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his or her] mental and emotional health than the coincidence of biological or natural parenthood.

***In re K.K.R.-S.***, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. ***See In re K.Z.S.***, 946 A.2d 753, 763-764 (Pa. Super. 2008) (affirming the involuntary termination of the mother's parental rights, despite the existence of some bond, where placement with the mother would be contrary to the child's best interests).

Our Supreme Court has observed that the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition and that "[e]ven the most abused of children will often harbor some positive emotion towards the abusive parent." ***In re: T.S.M.***, 71 A.3d at 267 (quoting ***In re K.K.R.-S.***, 958 A.2d at 535). The Supreme

- 13 -

Court instructed, "The continued attachment to the natural parents, despite serious parental rejection through abuse and neglect, and failure to correct parenting and behavior disorders which are harming the children cannot be misconstrued as bonding." *In re: T.S.M.*, 71 A.3d at 267 (citation omitted).

The trial court stated:

> This [c]ourt finds credible the testimony from Mr. Dejesus, the CUA Case Manager who opined that [C]hild was aware of Mother's relationship to him, however, [C]hild was not bonded to her. Instead[, C]hild looked to his foster parent for safety, comfort and to meet all of his daily needs. He believed [C]hild would not suffer irreparable harm if Mother's rights were terminated and that termination of Mother's parental rights and adoption would be in the best interest of [C]hild.

Trial Court Opinion, 3/2/17, at 25.

We have explained that a parent's own feelings of love and affection for a child, alone, do not prevent termination of parental rights. *In re Z.P.*, 994 A.2d at 1121. Further, this Court has opined: "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted). It is well-settled that "we will not toll the well-being and permanency of [a child] indefinitely." *Adoption of C.L.G.*, 956 A.2d at 1007 (citing *In re Z.S.W.*, 946 A.2d 726, 732 (Pa. Super. 2008) (noting that a child's life "simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting")).

- 14 -

After careful review, we find the record supports the trial court's factual findings, and the court's conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of S.P.*, 616 Pa. at 325-26, 47 A.3d at 826-27. Thus, it was proper for the trial court to find no bond exists such that Child would suffer permanent emotional harm if Mother's parental rights were terminated. We find no abuse of discretion in the trial court's termination of Mother's parental rights to Child pursuant to section 2511(b).

Finally, we note that as part of her Section 2511(b) argument, Mother asserts that the trial court should have appointed a separate attorney to determine Child's desires, citing *In re Adoption of L.B.M.*, 156 A.3d 1159 (Pa. 2017).[6] Mother's Brief at 8, 10-11. Mother states that Child, who was twelve years old at the time of the hearing, did not testify at the hearing, and could have expressed his desires and provided a rationale for his decision to be adopted. *Id.* at 11.

_____

[6] We note that after publication, *In re Adoption of L.B.M.*, 156 A.3d 1159 (Pa. 2017), was corrected and superseded on May 23, 2017, by *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), which, *inter alia*, clarified that part II-B of the opinion was not precedential and did not overrule *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012) in its entirety. Relevant to our discussion, in *K.M.*, this Court held, *inter alia*, that 23 Pa.C.S. § 2313(a) did not require appointment of a separate attorney when a guardian *ad litem*, who was an attorney, had been appointed and capably represented both the legal and best interests of the child. The non-precedential part II-B of *In re Adoption of L.B.M.* does not disturb this portion of *K.M.*

We are cognizant of the Pennsylvania Supreme Court's recent decision in *In re Adoption of L.B.M.*, wherein the author of the lead opinion, Justice Wecht, stated that 23 Pa.C.S. § 2313(a) requires the trial court to appoint counsel for a child in a termination of parental rights case, and the failure to do so is not harmless error. In part II-B of the lead opinion, Justice Wecht concluded that a trial court is required to appoint counsel to represent a child's legal interests even when the child's guardian *ad litem*, who is appointed to represent the child's best interests, is an attorney. Justice Wecht would hold that the interests are distinct and require separate representation. However, four members of the Court disagreed with this strict application of Section 2313(a). Rather, they opined, in various concurring and dissenting opinions, that separate representation would be required only if the child's best interests and legal interests conflicted.

Read together, *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), *In re K.M.*, 53 A.3d 781 (Pa. Super. 2012), and 23 Pa.C.S. § 2313(a), reveal that when the child has legal representation, appointment of separate counsel is necessary only when there is an actual conflict between the child's best interests and the child's legal interests.

In the present case, the record does not reflect any concerns that would have created a need for independent legal counsel for Child. In fact, we observe that Attorney Tuchinsky zealously represented Child on both fronts, and that Child's legal and best interests were not in conflict.

- 16 -

Accordingly, having concluded that the trial court did not err or abuse its discretion in terminating Mother's parental rights pursuant to section 2511(a)(2) and (b), we affirm the termination decree.

Decree affirmed.

P.J. Gantman concurs in the result.

Justice Fitzgerald did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/24/18